# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| SCOTT DOUGLAS, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 5:03-0113 |
| | ) | |
| TROY WILLIAMSON, Warden, | ) | |
| FCI Beckley, | ) | |
|     Respondent. | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

On February 12, 2003, Petitioner, acting *pro se* and then in confinement at FCI Beckley, in Beaver, West Virginia,[1] filed an Application Under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* By a Person in State or Federal Custody.[2] (Document No. 1.) Petitioner alleges that he was denied due process when the Federal Bureau of Prisons' [BOP] Disciplinary Hearing Officer [DHO] sanctioned him to a 40 day disallowance of good conduct time based upon a finding not supported by at least some evidence. By Standing Order filed on February 12, 2003, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 2.)

### PROCEDURE AND FACTS

On February 27, 2002, during a routine search of his cell at FCI Beckley, a correctional officer discovered hidden beneath the sink in Petitioner's cell, several brown seeds wrapped in

---

[1] The Federal Bureau of Prisons' Inmate Locator indicates that Petitioner is presently incarcerated at FCI Bennettsville, Post Office Box 52020, Bennettsville, South Carolina 29512.

[2] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

plastic, which tested positive for marijuana. (Document No. 10, p. 6.) Petitioner was charged with Possession of any Narcotics, or related Paraphernalia, in violation of the BOP prohibited act code 113, and placed in the Special Housing Unit [SHU] pending disciplinary proceedings. (Id., pp. 1, 5-8.) Petitioner appeared before the Unit Disciplinary Committee [UDC] on March 2, 2002, and his case was referred to the DHO for further action. (Id., pp. 1-2.) On March 14, 2002, Petitioner appeared before the DHO for a hearing on the charge.[3] (Id., p. 2.) Petitioner requested and was provided a staff representative. (Id., p. 5.) The DHO summarized the facts surrounding the charge against Petitioner as follows:

> [Petitioner] and inmate Victor Fields were assigned to cell #202, Oak B Lower housing unit on February 27, 2002. [Petitioner] had lived in the cell for approximately six or seven months. Inmate Fields had lived in the cell for about one year. T.M. Ellisson, Brave Specialist, searched that cell on February 27, 2002, at 1:30 p.m., and found several brown seeds wrapped in a piece of plastic hidden beneath the base of the sink. The seeds were dispatched to the lieutenants office where Andrew Mouse, Special Investigative Assistant, conducted a field test with a narcotics identification kit, test kit E and received a positive reading for the presence of marijuana. Mr. Mouse provided written testimonial evidence dated February 27, 2002, reporting that he conducted the test on the seeds and some green residue which was inside the bag containing the seeds. He also describes that some of the seeds had been broken open and some were un-broken.
>
> Mr. Mouse made a photocopy of the plastic bag with the marijuana seeds in it and attached it to his report.

(Document No. 10, p. 7.)

Petitioner denied the charge as contained in the Incident Report and insisted that he was unaware of the presence of the seeds underneath the sink. (Id.) Petitioner told the DHO that he believed the seeds were there before he was placed into the cell. (Id.) Inmate Victor Fields,

---

[3] Chuck Kilgore served as the Discipline Hearing Officer during Petitioner's March 14, 2002, hearing. (Document No. 10, pp. 5-8.)

Petitioner's then cellmate, also denied responsibility for the seeds and stated that they were present in the sink before he was placed in the cell more than one year ago. (Id.) After considering the testimony of the correctional officers who searched Petitioner's cell, seized the contraband, and tested the same, together with their various reports, evidence, and the testimony of Petitioner and his cellmate, the DHO determined that the BOP's policy requiring inmates to maintain their cells free of contraband outweighed Petitioner's denial. (Id.) Specifically, the DHO explained his decision in the DHO Report as follows:

> In deciding the issue, simple logic dictates that if the correctional staff can find this contraband during a normal routine search, then the occupants of the cell certainly could, and should have known the entire contents of the cell. Both you and inmate Fields lived in the cell long enough to know all of its contents and are to be held responsible for items of contraband found there. While I considered your denial, and your explanation that you knew nothing about the presence of these drugs, I find the requirement to maintain your area free and clear of contraband outweighs your denial, and the fact that this drug was found in your assigned cell and the test results prove that it was properly classified as a drug, solidify the fact that you were maintaining possession of an illegal drug in your personal area.

(Id.) The DHO sanctioned Petitioner to 40 days each of disciplinary segregation and disallowance of good conduct time and to a six month loss of visiting privileges. (Id.)

On April 20, 2002, Petitioner appealed the DHO's decision to the BOP's Regional Director. (Document No. 10, pp. 9-10.) By decision dated May 24, 2002, it was determined that the DHO's decision was supported by at least some facts and was based on the greater weight of the evidence. (Id., p. 11.) Accordingly, Petitioner's appeal was denied. (Id.) On June 11, 2002, Petitioner filed a further appeal to the Central Office, which was denied on September 5, 2002, as follows:

> Our review of your disciplinary proceedings indicates substantial compliance with Program Statement 5270.07, Inmate Discipline and Special Housing Units. The DHO's decision was based upon the greater weight of the evidence, and he has detailed in Section V of the DHO Report, the specific evidence upon which he relied to support his findings. We also find it reasonable for the DHO to have made this

determination. The Reporting Officer indicated that during a search of your cell he found a substance that tested positive for marijuana. The DHO also considered your statements during the hearing however placed greater weight on the reporting officer's account of the incident and physical evidence. We find the evidence supports the charge and therefore concur with the DHO decision.

P.S. 5270.07 stipulates that inmates are responsible for keeping their area free of contraband. Since the contraband item was found in your assigned living quarters, you were held responsible for the contraband. Although you dispute the charge, the DHO considered that you had access to the area in which the contraband was found.

Based on the above, we find that the required disciplinary procedures were substantially followed; the greater weight of the evidence supports the decision; and the sanctions imposed were appropriate for the offense. Your appeal is denied.

(Id., p. 14.)

Petitioner filed his Application under 28 U.S.C. § 2241 in this case on February 12, 2003, alleging the following grounds for *habeas* relief:

Ground one: Does (Program Statement 5270.07 of the Bureau of Prisons) require inmates to conduct staff-like searches of cells upon being assigned to cells?

Ground two: Can unlocked cells be considered a personal enough area, making inmates responsible for contraband found there when access by inmate plumbers, etc., is frequent and uncontrolled access by staff?

Ground three: May an inmate actually have a knowing control or dominion over contraband for the statutory presumption of "possession" for contraband found in highly accessible areas open to other inmates?

(Document No. 1, p. 6.) The undersigned determined that Petitioner's Application did not provide

enough information for the Court to determine precisely the nature of his claims and the relief he

requests under § 2241, and by Order entered February 20, 2003 (Document No. 3.), directed that he

submit a statement explaining specifically what sanctions and penalties he was assessed on the basis

of the determination that he possessed the contraband and copies of documents evidencing findings

and the assessment of the sanctions and penalties in March, 2002. (Document No. 1.) In response

4

to the Court's Order, Petitioner filed on March 12, 2003, his statement outlining the sanctions imposed by the DHO. (Document No. 5.) On April 3, 2003, he submitted copies of his administrative remedies. (Document No. 7.) On November 5, 2004, Petitioner further filed his "Amended Application for Writ of Habeas corpus Ad Subjiciendum" and Memorandum of Law in Support. (Document Nos. 10-11.) Citing <u>Superintendent v. Hill</u>, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), Petitioner alleges that the DHO's decision to disallow him 40 days of good conduct time is not supported by at least some evidence. (Document Nos. 10, p. 3 and 11, p. 1.) He states that the evidence of record establishes only that the seeds were seized from a "jointly occupied cell." (Document No. 11, p. 4.) Accordingly, he contends that he "cannot be held responsible for contraband in his living area unless he has knowledge that contraband exists in his area." (<u>Id</u>., p. 5.) He further alleges that he did not receive a copy of the results indicating that the seeds tested positive for marijuana. (<u>Id</u>., p. 4.) Petitioner alleges that the violation be expunged from his record and his good time conduct reinstated. (Document No. 10, p. 4.)

## <u>ANALYSIS</u>

### 1.      **Petitioner was not denied his Fifth Amendment right to due process of law**.

Although the Fifth Amendment of the United States Constitution provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law", the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for the period of incarceration. <u>See</u> U.S. Const. amend. V; <u>Gaston v. Taylor</u>, 946 F.2d 340, 343 (4th Cir. 1991). The fact of conviction and imprisonment implies the defendant's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. <u>Gaston</u>, 946 F.2d at 343. Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." <u>Id</u>. (emphasis

5

added) To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. <u>See</u> <u>Board of Regents v. Roth</u>, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). The Supreme Court held in <u>Sandin v. Conner</u>, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that interests protected by the Due Process Clause "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . ., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id.</u>, 515 U.S. at 484, 115 S.Ct. at 2300 (Citations omitted). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life []", the inmate's claims have no merit. <u>Id</u>.

Implicit in Petitioner's reliance on <u>Hill</u>, is his claim that he was denied due process of law when he was sanctioned to a 40 day disallowance of good conduct time based on a decision not supported by at least some evidence of record. "[T]he Due Process Clause itself does not create a liberty interest in credit for good behavior." <u>Sandin</u>, 515 U.S. at 477, 115 S.Ct. at 2297. Title 18, U.S.C., § 3624(b)(1),[4] however, provides that federal inmates are *eligible* to receive good conduct

---

[4] Title 18, United States Code § 3624(b)(1) provides:

**(b) Credit toward service of sentence for satisfactory behavior. –**

    (1) Subject to paragraph (2), a prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. Subject to paragraph (2), if the Bureau determines that, during that year, the prisoner

time if they comply with BOP institutional disciplinary regulations. 18 U.S.C. § 3624(b)(1). The decision to award such credit is vested solely within the discretionary authority of the BOP. Id. Section 3624(b)(1) provides that a prisoner serving a term of imprisonment greater than one year "*may* receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, . . . *subject to* determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations." 18 U.S.C. § 3624(b)(1) (emphasis added). If the BOP determines that the prisoner "has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit . . or shall receive such lesser credit *as the Bureau determines to be appropriate*." Id. (emphasis added). The award of any credit under this section does not vest until the federal prisoner is released from the BOP's custody. See 18 U.S.C. § 3624(b)(2). Federal inmates thus are eligible, but not entitled, to receive good conduct time and therefore, do not have an expectation interest, or otherwise possess a liberty interest, in the award of such credit. Although a sanction of good conduct time in essence increases the inmate's actual period of confinement, such an increase does not violate the Due Process Clause because it does not impose "an atypical and

---

has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate. In awarding credit under this section, the Bureau shall consider whether the prisoner, during the relevant period, has earned, or is making satisfactory progress toward earning, a high school diploma or an equivalent degree. Credit that has not been earned may not later be granted. Subject to paragraph (2), credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

significant hardship on the inmate in relation to the ordinary incidents of prison life."[5] Such a sanction does not change the substance of the District Court's sentence of imprisonment. Accordingly, Petitioner's punishment with respect to the disallowance of good conduct time, simply did not amount to the sort of restraint upon his liberty which is actionable under <u>Sandin</u>. Nor did it amount to "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Petitioner's reliance on <u>Hill</u> is misplaced. In <u>Hill</u>, due process protections under the Fourteenth Amendment were created by virtue of Massachusetts law. <u>Hill</u>, 472 U.S. at 454, 105 S.Ct. at 2773. At the federal level, however, there is no statute creating a protected liberty interest in federal inmates' receipt of good conduct time.

Nevertheless, even had Petitioner possessed a liberty interest in the receipt of good conduct time under 18 U.S.C. § 3624(b), the Court finds that Petitioner has not demonstrated that his due process rights were violated. The Supreme Court has determined that to comport with the requirements of due process, prison officials must provide the following procedural safeguards to

---

[5] Although the Supreme Court rejected in *Sandin* the mandatory/discretionary language analysis of prison regulations in determining whether an inmate possesses a certain liberty interest, the Court notes that the April 26, 1996, amendment to 18 U.S.C. § 3624(b) [Pub. L. 104-134, Title I, § 101[(a)][Title VIII, § 809(c)], Apr. 26, 1996, 110 Stat. 1321-76], changed the language "shall receive credit" to "may receive credit." Furthermore, 28 C.F.R. § 523.20 provides that pursuant to 18 U.S.C. § 3624(b) "for offenses committed on or after November 1, 1987 but before April 26, 1996, an inmate earns 54 days credit toward service of sentence (good conduct time credit) for each year served." 28 C.F.R. § 523.20. Credit awarded for offenses committed during this time period vested upon receipt. 18 U.S.C. § 3624(b)(1994). For offenses committed on or after April 26, 1996, in awarding good conduct time, the BOP must consider whether the inmate has "earned or is making satisfactory progress . . . toward earning a General Educational Development (GED) credential before awarding good conduct time credit." 28 C.F.R. § 523.20. These changes in the award of good conduct time together with the repeal of 18 U.S.C. § 4161, [Pub. L. 98-473, Title II, § 218(a)(4), Oct. 12, 1984, 98 Stat. 2027] further evidence Congress' intent that inmates are not entitled to and do not have a liberty interest in the receipt of, good conduct time credit.

a prisoner when conducting disciplinary hearings: (1) written notice of the charged violations, (2) disclosure of evidence against the prisoner, (3) the right to confront and cross-examine witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation), (4) a neutral and detached hearing body, and (5) a written statement by the factfinders as to evidence relied on and reasons for disciplinary action. Wolff, 418 U.S. at 564, 94 S.Ct. at 2978-79; Morrissey v. Brewer, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972); Segarra v. McDade, 706 F.2d 1301, 1304 (4th Cir. 1983). Petitioner does not challenge any of the foregoing procedural requirements.

Furthermore, the Supreme Court has held that an inmate has "no legitimate statutory or constitutional entitlement" to any particular custodial classification which is sufficient to invoke due process even if a change in classification would impose a "grievous loss" on the inmate. Moody v. Daggett, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976). According to the Supreme Court, Congress has given federal prison officials full discretion to control the classification of prisoners residing in their institutions. Id. (citing 18 U.S.C. § 4081). Pursuant to 18 U.S.C. §3621(b) the BOP has the authority to direct confinement of federal prisoners "in any available facility and may transfer a prisoner from one facility to another at any time." See Prows v. Federal Bureau of Prisons, 981 F.2d 466, 469 n. 3 (10th Cir. 1992), cert. denied, 510 U.S. 830, 114 S.Ct. 98, 126 L.Ed.2d 65 (1993); Barden v. Keohane, 921 F.2d 746, 483 (3d Cir. 1991). Petitioner neither contends, nor does the undersigned find, that the conditions of his confinement in SHU were atypical or created a significant hardship as compared to ordinary prison life in mainline population. Nothing in the record indicates that Petitioner's conditions of confinement in segregation were atypical or resulted in a significant hardship. The more restrictive and harsh

conditions found in disciplinary segregation are part of the price that inmates pay for their misconduct while confined in prison. See Sandin, 515 U.S. at 483-84, 115 S.Ct. at 2299-2300 (the Court determined that punitive segregation does not create a major disruption in an inmate's environment). Petitioner therefore, does not possess a liberty interest in remaining free of disciplinary segregation.

Finally, the undersigned finds that Pettioner does not possess a liberty interest in retaining privileges. Petitioner's loss of visiting privileges was for only six months. "[T]he incidental and short-lived deprivations complained of by [Plaintiff] are too ephemeral to give rise to a protected liberty interest requiring prior notice and hearing." Dawson v. Kendrick, 527 F.Supp.1252,1305 (S.D. W.Va. 1981). Accordingly, the undersigned finds that Petitioner has failed to demonstrate that any action of the Respondent deprived him of his constitutional right to due process of law and therefore, his § 2241 Applications must be dismissed.

**2.      The DHO's finding of guilt is supported by the record**.

Petitioner further contends that the weight of the evidence does not support a finding of guilt, thereby violating his Fifth Amendment right to due process. In Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454-56, 105 S.Ct. 2768, 2773-74, 86 L.Ed.2d 356 (1985), the Supreme Court held that to comport with the requirements of due process, the prison disciplinary hearing board's decision revoking a state prisoner's good time credits must be supported by "some evidence in the record." The relevant inquiry is "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56, 105 S.Ct. at 2774. The BOP has adopted a slightly higher standard than that established in Hill, requiring the DHO to base his decision on the "greater weight of the evidence." BOP Program Statement [P.S.] 5270.07.

10

The phrase "greater weight of the evidence" refers to the merits of the evidence produced, and not to the quantity of witnesses presented. Id.  Accordingly, pursuant to BOP regulations, the controlling inquiry is whether the DHO's decision was based on the greater weight of the evidence.

The DHO's report indicates that he based his decision on the statements and testimony of the reporting staff member and the staff member who tested the seized substance, together with the testimony of Petitioner and his cellmate. (Document No. 10, Exhibit 1, p. 2.) The reporting officer's statements indicated that on February 27, 2002, he seized from underneath the base of the sink in Petitioner's cell, during a routine search of his cell, several brown seeds wrapped in plastic. The seeds were then tested by another officer who stated that they were positive for marijuana. Although Petitioner denied knowledge of the presence of the seeds in his cell, he admitted that he had resided in the cell for the past six or seven months. The DHO determined that because the reporting officer was able to find the seeds during a routine search of the cell, Petitioner likewise, could, or should, have known of their existence. Furthermore, the DHO placed great emphasis on BOP P.S. 5270.07, Chapter 3, page 1, which requires inmates to maintain their cells free of contraband. The undersigned finds that the DHO's determination that because an officer could find the contraband during a routine search of Petitioner's cell, then likewise, he should have known of the seeds' existence given that he had resided in the cell for the approximate seven months preceding the search. In view of the foregoing, the undersigned finds that the DHO's decision is supported by both "some evidence" and the "greater weight of the evidence," and was not rendered in an arbitrarily or capricious manner. Accordingly, Petitioner has failed to demonstrate that any action by the DHO deprived him of his constitutional right to due process of law.

11

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DISMISS** Petitioner's Application (Document No. 1.) and Amended Application (Document No. 10.) with prejudice and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Chief United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days (ten days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Chief Judge Faber, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to counsel of record and to Petitioner.

ENTER: September 15, 2005.

R. Clarke VanDervort
United States Magistrate Judge